UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BORIS AYALA,            )
                        )
    Movant,           )
                        )
v.                      )
                        ) Crim. No. 06-56-P-S
UNITED STATES OF AMERICA, ) Civ. No. 10-29 -P-S
                        )
    Respondent        )

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Boris Ayala has filed a 28 U.S.C. § 2255 motion challenging his sentence after pleading guilty to three federal drug counts. Ayala is serving a 262-month sentence on one count and 240-month concurrent sentences on the remaining two. He also faces a life-term of supervised release (not to mention deportation) once he completes his sentence of imprisonment. This 28 U.S.C. § 2255 follows on the heels of Ayala's unsuccessful direct appeal to the First Circuit. See United States v. Ayala, 290 Fed.Appx. 366, 368, 2008 WL 3965505, 2 (1st Cir. 2008) (unpublished).[1] In the current proceeding Ayala asserts that his sentencing counsel was ineffective in four respects and that his appellate attorney was deficient in two ways.[2] I recommend that the Court deny Ayala 28 U.S.C. § 2255 relief.

*Discussion*

**A.      Section 2255 Review and the Ineffective Assistance of Counsel Standard**

---

[1]      I proceed to the discussion of the merits of Ayala's grounds without analyzing concerns about the timeliness of this motion because the United States has graciously not contested the 28 U.S.C. § 2255(f) statute of limitation admissibility.

[2]      See infra note 8.

The First Circuit set forth the standard for 28 U.S.C. § 2255 ineffective assistance claims in United States v. De La Cruz:

> "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In order to prevail, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In other words, a defendant must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting there from. In this case, Defendant has demonstrated neither.
> Although the Supreme Court in Strickland discussed the performance prong of an ineffectiveness claim before the prejudice prong, the Court made clear that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. As the Court noted: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

514 F.3d 121, 140 (1st Cir. 2008); accord Alfano v. United States, 592 F.Supp.2d 149, 154 -55 (D. Me. 2008). "[C]ounsel inevitably must decide where to focus his or her efforts; not every fact can be double-checked." Peralta v. United States, 597 F.3d 74, 82 (1st Cir. 2010). As Strickland noted, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690.

Ayala does not challenge the validity of his guilty plea; his only grounds relate to his sentencing. "In order to satisfy the 'prejudice' prong," Ayala "must establish that 'but for his counsel's deficiency, there is a reasonable probability that he would have received a different sentence.'" Peralta, 597 F.3d at 79 -80 (1st Cir. 2010) (quoting Porter v. McCollum, __U.S. __, __, 130 S.Ct. 447, 453 (2009) (per curiam) and citing Strickland, 466 U.S. at 694 and Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Although he need not show 'that counsel's deficient conduct

2

more likely than not altered the outcome' of his sentencing proceeding, he must establish 'a probability sufficient to undermine confidence in [that] outcome.'" Id. at 80 (quoting Porter, 130 S.Ct. at 455-56).

Not insignificant to the resolution of the pending motion is the First Circuit's acknowledgment that when a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). In issuing the following recommended decision I cannot take such liberty but I can approach the record in a fashion that takes into account this Court's ability to do so on review of this recommendation.

**B.   Prosecution Version and Drug Quantity Determination**

Ayala's Prosecution Version represents that from approximately the winter of 2004 until at least approximately March 2006, numerous individuals, including Ayala, conspired to distribute cocaine and cocaine base in the Saco, Maine area. An individual identified only as CD1 was prepared to testify that from 2004 until early 2006, he would obtain cocaine from Ayala or others working on behalf of Ayala. CD1 and other witnesses would have testified they collectively received over 5 kilograms of cocaine and over 50 grams of cocaine base from Ayala and those persons working on behalf of Ayala. On March 2, 2006, a search warrant was executed on the residence where CD1 had obtained the bags of cocaine from an individual working with Ayala on two recent prior occasions. During the course of the search, approximately two ounces of cocaine were found inside the residence. In the garage attached to the residence, a silver Ford Windstar van was observed and seized pursuant to the search warrant. A subsequent search of that vehicle revealed a hidden trap in the bottom of the

passenger compartment. Inside the trap, agents recovered approximately 407 grams (gross wgt.) of cocaine, 47 grams (gross wgt.) of cocaine base, and $47,240.00. The evidence would show that Ayala utilized this vehicle to store the cocaine and cocaine base that he and other members of the conspiracy were distributing. The testimony of a trained chemist would have been offered to establish that the materials recovered in the search and from the individual who had made the two prior sales contained cocaine and cocaine base. (Prosecution Version at 1-2, Doc. No. 40.)[3]

The Revised Presentence Investigation Report (PSR) contains the following summary of the preparer's drug quantity attribution:

> Because there are mixed types of drugs in this case, the drug quantities are combined using their marijuana equivalent (1 g of cocaine base = 20 kg of marijuana and 1 g of cocaine hydrochloride = 200 g of marijuana), for a total of **8,810 kilograms of marijuana equivalent**. This figure will be used to calculate the drug quantity in this case. In the Probation Office's opinion, this total is very conservative estimate since it only accounts for the last six months of transactions between Boris Ayala and the CI. The estimated drugs do not account for the drugs that Boris Ayala sold while staying at Dretchen's house and the estimated drugs are a low estimate of the amount of drugs Boris Ayala sold Dupuis.

(Id. ¶ 15) (second emphasis added). "The Drug Quantity Table at U.S.S.G. §2D1.1(c)(3), establishes a base offense level of 34 for offenses that involve between 3,000 and 10,000 kilograms of marijuana." (PSR ¶ 21.) In arriving at these figures the PSR preparer made "a reasonable, conservative estimate" of the cocaine attributed to Ayala vis-à-vis the informant (id. at 6 n.3) and cited the 'rule of lenity' in setting forth the estimates of Ayala's dealings with Gary Dupuis (id. at 7 n.6).

---

[3] The final paragraph pertaining to the testimony of a trained chemist is of consequence apropos Ayala's challenge to his attorney's performance with respect to the chemical make-up of the substances he pled guilty to distributing.

At sentencing this Court considered counsel's arguments for a 188-month sentence based on an offense level of 32 rather than 34. (Sentencing Tr. at 10-11, 14-15.) The prosecutor maintained that Ayala was clearly in the base-offense-level-34 parameter. (Id. at 16-18.) He maintained that there should be a four-level increase for his leadership role to 38, dropping down to 35 after the acceptance of responsibility adjustment. (Id. at 23-24.) The Court denied defense counsel's objections (discussed below) and concluded that the drug quantities set forth in the PSR were "substantially correct." (Id. at 25.) Rejecting the prosecutor's leadership role position, it settled on a three-level increase for leadership role. (Id. at 26.)

**C.   Sentencing Counsel**

**1.   Attorney should have investigated the lab report and confidential informant statements towards challenging the 100:1 cocaine base ratio**

Ayala's first discontent with his sentencing attorney is for failing to object to this Court's sentencing of him on the basis of representations made in the PSR and by the prosecutor that he was responsible for 'crack' within the meaning of the applicable criminal statute and sentencing guideline. (Sec. 2255 Mem. at 10-15, Doc. No. 115 at 23-28.) In his response to the United States' opposition to his 28 U.S.C. § 2255 motion, Ayala clarifies the brunt of this challenge apropos the lab report relied upon by the United States:

> Where the lab reports claim "chunky white power contains **cocaine freebase**". See (Exhibit 1 attached to Memorandum of Law). See <u>United States v. Robinson</u>, 144 F.3d 104, 108 (1st Cir. 1998) ("Cocaine base … is a natural alkaloid found in the coca leaf '… Powder cocaine, cocaine hydrochloride, is made my dissolving this cocaine base in acid. Id. … Crack is an artificial 'hard and rock-like' substance made by cooking powder cocaine with baking soda. Id. … Crack is chemically identical to naturally occurring cocaine base.") Id.

(Ayala Opp'n at 5-6.) He also relies on United States v. Dunbar, 553 F.3d 48, 64 -65 (1st Cir. 2009) for the idea that the distinction among the different forms of cocaine base must be proven by the Government at a sentencing hearing.

Vis-à-vis Ayala's direct appeal the First Circuit recognized that the sentencing court had committed an error based on the crack/powder disparity in view of Kimbrough v. United States, 552 U.S. 85 (2007), but noted as follows:

> However, the Kimbrough error was harmless because even if the court had ignored the crack guidelines entirely and sentenced defendant only for the amount of powder cocaine attributable to him, his base offense level would still have been the same. In other words, because "the crack/powder dichotomy is irrelevant to the ... sentence actually imposed in this case[,] ... the decision in Kimbrough is of only academic interest here." United States v. Jimenez, 512 F.3d 1, 9 (1st Cir.2007).

Ayala, 2008 WL 3965505 at *2 (footnote omitted). In a footnote the Panel explained: "The same base offense level would have applied if there were no crack involved at all, and the only drug involved was 26.05 kilograms of cocaine. See U.S.S.G. § 2D1.1(c)(3) (providing that Level 34 applies to '[a]t least 15 KG but less than 50 KG of Cocaine')." Id. at *2 n.2.

Thus, Ayala's arguments regarding counsel's performance vis-à-vis this issue gains him nothing. Even if counsel had established that none of the cocaine attributable to him was "crack" cocaine, the base offense level would not have changed. Counsel unsuccessfully attempted to argue that the C.I. who attributed the 26 kilograms to Ayala exaggerated the amounts, but as counsel for the United States successfully argued, the amounts were well above the 15 KG floor for Level 34 and, even if the court thought there was some minor exaggeration, it would not change the base level, "just move the defendant further down in Offense Level 34." (Sentencing Tr. at 17, Doc. No. 72.)

### 2. Attorney did not object to court's use of clearly erroneous facts at sentencing

The gist of this ground appears to be that counsel failed to object to the court's drug weight determination, its criminal history findings, and the fact that Ayala went to Texas and was arrested there with large sums of money even though this conduct resulted in charges that were dismissed. Ayala notes that after his sentencing the Texas charges were dismissed, but he does not present any evidence that defense counsel could have used to counter the court's finding that he was arrested in Texas with a large sum of money. It appears that the Texas charges were dismissed as a consequence of Ayala's transfer to Maine. Nor does Ayala present any facts to counter the sentencing judge's factual findings that a significant number of his criminal history points were based upon separate arrests over a period of eleven to twelve months even though the sentencing for those charges all occurred on one day.

With respect to sentencing counsel's performance, the PSR summarized sentencing counsel's objection as follows:

> Over-representation of criminal history is also an available grounds for departure (§4A1.3). In this case, of the 18 criminal history points assessed the defendant 15 are attributed to a single day in court (paragraphs 34-38). Over 14 years ago a young, addicted street level offender was sentenced to a single concurrent sentence of three to six years in prison for a number of relatively modest New York City drug matters. Due to intervening arrests, these each score separately. Ayala received neither treatment nor a significant detention or hiatus from use and is immediately returned to the street. Had these offenses been consolidated, the defendant's criminal history category would be III. An offense level of 34 with a criminal history category of III would result in a custodial sentence of at least 82 months lower th[a]n the bottom of the established guideline range.

(PSR at 22.) Counsel argued during the pre-sentence chambers conference:

> As to criminal history, I suggest that it's an overstated criminal history. The 18 criminal history points, 15 of them stem from a single day in December of -- 1st of 1992, when five cases were consolidated and he received one -- one concurrent sentence. Because of intervening arrests, the grouping requirements

7

make those separate points. If they were treated as one, they would have been three points, combined with a later conviction would be six points, which would make him a Criminal History III.

        My review of the case law on departures for criminal history suggests that they are -- they are totality of the circumstances analysis by the Court, and so I don't think the criminal history is looked at by the Court in a vacuum. I think it's looked at post Booker[4] in light of the entire statutory intent, meaning that, while I could say to the Court you could treat it as just three points, you could also choose at any point to reach a -- a guideline advisory area that the Court felt was commensurate with what an appropriate sentence was.

(Sentencing Tr. at 4) (chambers conference). He also revisited this argument in open court. (Id. at 12-13.)

The First Circuit reviewed claims relating to the court's reliance on the Texas arrest and its refusal to impose a variant sentence or depart downward because of an overstated criminal history. It observed the following:

> Although the district court's refusal to grant a downward variance on that ground is reviewable for "reasonableness," such review is limited to the "deferential abuse-of-discretion standard." Gall v. United States, [552 U.S. 38, 41] (2007). Here, the district court carefully considered this ground for variance and plausibly explained its conclusion that defendant's criminal history score did not over-represent his actual criminal history. In particular, the court noted that, although five of the prior convictions were obtained on the same day, they were the result of five separate offenses and that, each time, despite having been arrested and released for the previous offense, defendant continued to commit the same type of offense again and again. The court also noted that defendant had reentered the country illegally after being deported and that, even after being arrested for the instant offenses, he was arrested in Texas with large sums of money, indicating that he continued to engage in drug dealing there. That explanation was procedurally and substantively sufficient, particularly given the fact that the ultimate sentence was within the guidelines range. Rita v. United States, 551 U.S. 338 (2007).

Ayala, 2008 WL 3965505 at *3.

---

[4]     United States v. Booker, 543 U.S. 220 (2005).

Ayala has failed to demonstrate that counsel's performance was deficient on this score because he has failed to demonstrate that there was any evidence counsel could have presented to counter facts about which he is complaining. This Court made a sound legal determination that because of the fact of the intervening arrests, the offenses Ayala was sentenced on a single day did not over-represent his criminal history. With regards to the conduct in Texas being highlighted by the Court as part of its variance analysis, "counsel inevitably must decide where to focus his or her efforts; not every fact can be double-checked," Peralta, 597 F.3d at 82, bears reiteration here. In any event there is no showing that counsel could have presented any facts negating that the *arrest with large sums of money* actually occurred as noted by the sentencing court.

**3. Attorney neglected to object to the court's failure to notify the defense of the possibility of imposing a life term of supervised release**

With respect to his third 28 U.S.C. § 2255 ground, Ayala complains that his attorney did not object to this Court's failure to advise Ayala of the possibility of receiving a life-term of supervised release. In the context of his direct appeal Ayala did present a challenge to this imposition in his pro se brief. The First Circuit concluded:

> In his pro se brief, defendant challenges his lifetime term of supervised release on the ground that it exceeds the statutory maximum. In making that argument, defendant relies on 18 U.S.C. § 3583(b), the general statute concerning terms of supervised release. That reliance is misplaced. As we have previously held, penalties for drug offenses are governed by 21 U.S.C. § 841(b), not by 18 U.S.C. § 3583(b). United States v. Cortes-Claudio, 312 F.3d 17, 21 (1st Cir.2002). And, under 21 U.S.C. § 841(b)(1)(A), the maximum supervised release term is life. Id. at 22-23. Therefore, the district court did not err, plainly or otherwise, in this regard.

Ayala, 2008 WL 3965505 at 4.

The United States concedes, citing <u>United States v. Fink</u>, 499 F.3d 81 (1st Cir. 2007) and <u>United States v. Nelson-Rodriguez</u>, 319 F.3d 12 (1st Cir. 2003), that in the context of direct appeals of sentences the First Circuit has explained that a defendant is entitled to advance notice regarding the court's intent to impose a term of supervised release that is greater than that for which the United States Sentencing Guidelines provide. (Gov't Opp'n at 33.) The PSR preparer articulated Ayala's supervised release exposure as follows:

> **Supervised Release**
> 60. Statutory Provisions: For Count 1, a term of at least five years of supervised release, to life, is required if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. § 841(b)(1)(A). For Counts 2 and 3, a term of at least three years of supervised release, to life, is required if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. § 841(b)(1)(C). Such terms of supervised release run concurrently, pursuant to 18 U.S.C. § 3624(e).
> 61. Guideline Provisions: The guideline range for a term of supervised release is at least three years but not more than five years or the minimum required by statute, five years, whichever is greater, pursuant to U.S.S.G. §5D1.2(a)(1).

(PSR ¶¶ 60, 61.)

In the context of this collateral challenge, the United States argues that even if sentencing counsel had complained about the want of notice vis-à-vis the imposition of the maximum term of supervision, there is no indication in the record that this Court would have made a different determination. I agree that there is no indication in the record that the Court would have been inclined to impose a lesser period of supervision but also recognize that there is nothing in the record before me that the Court would not have considered an argument by counsel that the term should not be life. This Court did query counsel if there was any objection to the term of supervised release and counsel indicated that there was not. (Sentencing Tr. at 37.) To state the obvious, Ayala is facing deportation at the end of his period of imprisonment so it hard to take an accurate measurement of the tangible interests at stake on either side of the prosecution/defense

supervised release equation.  With respect to the Sixth Amendment ineffective assistance of counsel analysis of this ground Ayala's opposition to the United States' arguments offers nothing to buffer his prejudice argument beyond emphasizing that he had a right to notice by the Court that it intended to impose this heightened term of supervision.  (Ayala Opp'n at 15-18.)  This is an instance where I have no basis to recommend that Ayala be granted relief along the lines of resentencing as to the supervised release term while I am cognizant that the Court is in a better position to gage the merits of this ground in view of its first-hand experience of the sentencing proceedings.  See McGill, 11 F.3d at 225.

### 4. Attorney did not challenge the preponderance of the evidence drug quantity determination

In his final claim against sentencing counsel Ayala insists that his attorney should have challenged this Court's application of a preponderance of the evidence standard apropos drug quantity.  He argues: "[N]one of the records, the CI's recorded conversations with Petitioner, the evidence gathered from the van, or Petitioner's guilty plea proffer show that he had the intent, capability to produce the attributed amounts of cocaine or cocaine base." (Ayala Opp'n at 20-21.)  Acknowledging that his sentencing attorney did object to drug quantities as part of the sentencing proceedings, Ayala argues that his attorney did not "object to drug quantity from the aspect and angle Petitioner argues in the § 2255 petition."  (Id. at 21.)  It is Ayala's assertion that the prosecution "did not prove by a fair preponderance of the evidence that the CI and others would have testified that they obtained on a weekly basis; within a six month period prior to the execution of the search warrant; one kilogram weekly." (Sec. 2255 Mem. at 31, Doc. No. 115 at 44.)

In his memorandum responding to the United States' opposition Ayala focuses in on an argument that the government's "'cooperators' tried to induce Petitioner to admit to sell him a kilogram of cocaine and Petitioner never agreed to this amount and specifically could not produce that amount." (Ayala Opp'n at 20 n.11.) He states that the CI was trying to get him to admit to kilogram amounts and Ayala told him that he could only sell 400 grams. (Id. at 22 n.12.) Ayala thinks that it was impermissible to credit the testimony of Cliff Phillips over the grand jury testimony of Andrew Morris. (Id. at 23.) In his January 11, 2010, Affidavit accompanying this oppositional memorandum, Ayala explains:

> [T]he PSR still attributed kilogram amounts to Petitioner, in light of fact that CI's testimony was wholly contradicted by the very person he was said to distribute kilogram amounts to which was Andrew Morris who said Cliff Phillips only gave him 8-ball (3.5 grams). [Defense counsel] not objecting to these findings prejudiced Petitioner cause it is obvious that § 2D1.1 n.12 was not taken into account when it was specifically written to curb overzealousness at the hands of the prosecution and prosecution sponsored amounts.

(Ayala Aff. ¶ d, Doc. No. 125-1.) He opines: "A credibility determination must be done and an evidentiary hearing is required or resentencing of Petitioner in consideration of the amounts he was capable of producing or intended to produce." (Ayala Opp'n at 23.)

At the sentencing hearing counsel presented an exhibit of his written objections[5] which he represented essentially mirrored his earlier objections.[6] As part of his efforts to persuade the court on drug quantity counsel stated in the chambers conference,

---

[5] The exhibit is not part of the CM/ECF docket.

[6] The PSR reflects the following objections by counsel:

> Paragraphs 2-15, 21, 24, 26, 28, 30, and 58 (Factual, Drug Quantity, Leadership Role): The defendant objects that any fact, other than a prior conviction, not found by a jury beyond a reasonable doubt that increases a defendant's sentence violates a defendant's right to trial by jury as safeguarded by the Sixth Amendment to the U.S. Constitution. The defendant cites Apprendi, Blakely, and Cunningham in support of their position. "The relevant statutory maximum, is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may

as to the drug quantity, the current drug quantity is found at a 34. Mr. Ayala admitted as part of the prosecution version and his guilty plea to the 5 kilos of cocaine and 50 grams of base. That results in a Level 32 under the -- under the guidelines. I am suggesting to the Court that based on the vagueness of the witness testimony which we have categorized as exaggerated, but that exaggeration combines with it vagueness as to which quantities are of which substance and looking at the -- at the policy statements in the investigation as to the hundred to one ratio, and looking at 3553(a), that a combination of those factors could lead the Court to use 32 rather than 34 as an applicable relevant conduct point.

---

impose without any additional findings." Blakely v. Washington, 542 U.S. at 303-304, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). "[B]y placing a sentence-elevating factor within the judge's providence, violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments. We hold that it does." Cunningham v. California, 2007 U.S.Lexis 1324 (January 22, 2007).

    The defendant agrees that Probation may include factual information beyond the essential elements of the count(s) of conviction, or contained in the prosecution version, as information for the Court. However, the defendant objects that the information is facts upon which the Court may rely in order to make findings in relation to the calculation of the advisory guideline range. The defendant reads the above cited cases as precluding the Court from adjusting the potential guideline sentencing range based on non-element facts included in the report.

    The defendant admitted to five kilograms of cocaine hydrochloride, and 50 grams of cocaine base. These quantities produce a level 32. Any information relied on beyond this requires judicial fact finding increasing the maximum potential sentence and is therefore unconstitutional. Similarly, the paragraph on leadership requires judicial fact finding which increases the maximum potential sentence. The final offense level should be 29, and when combined with a criminal history of IV yields an advisory guideline range of 151 to 188 months.

The defendant's objections are noted for the Court's consideration at sentencing.

    ….

    Paragraphs 8, 10, 12, 14-15, and 24 (Factual Objections): The defendant objects that the weights listed in the report are gross and not net. The weight of the packaging should be removed. (The Probation Office notes it has never received net weights of the drugs seized from the government.)

    The total of 24 kilograms is greatly exaggerated. The quantity claims made by the CI (who is of limited credibility having been heavily addicted to at the time) are just plain wrong. For example, the report uses the figure of $40,000 per kilogram. Had the defendant sold 24 kilograms at $40,000, this would have generated $960,000. No evidence ever representing that kind of money was ever developed by the government. The CI claimed to owe the defendant $62,000, and this pales in comparison to $960,000. The defendant has admitted to a significant quantity, he accepts the moniker that he is a multi-kilo seller, and that he admitted to at least five kilograms. A five kilogram figure is a more accurate figure.

    Morris' grand jury testimony revealed more specificity of at least two times each, for a total of four not five transactions, as to the defendant and Louis for cocaine base. The 26 gram estimate is a gross weight. Each rock had a separate bag. Applying two times to the defendant and Louis and subtracting one third of the weight for packaging yields a net weight of cocaine base of 69 grams (26 grams multiplied by 2/3 multiplied by four transactions).

(PSR at 20-21.)

(Sentencing Tr. at 3) (chambers conference). In open court, counsel articulated:

> [F]ollowing the guideline analysis, I suggest to the Court that the exact drug quantities, and I realize the First Circuit says that the Court needn't find drug quantities exactly, but looking at the drug quantities as discussed in the paragraphs of those reports and looking at the variation between whether the defendants -- the co-defendants that are listed within that report, when they're discussing cocaine base, when they're discussing powder, and the quantities they're discussing, looked at in the totality of the circumstances, and particularly, for example, the claim of 15 kilos and we get dollar amounts that are grossly inconsistent with anything that the fact patterns would show existed for dollar amounts, should lead the Court to find that a Level 34 is an exaggerated amount and that a Level 32 meets more consistently with a factual finding by a preponderance, which I understand remains currently the standard for the Court.

(Id. at 10-11.)

Ayala insists that it was the prosecution's burden to prove that the drug-quantity representations made in the PSR were accurate and based on credible witness reports. The prosecutor made the following argument vis-à-vis drug quantity:

> [F]ocusing simply on the crack cocaine that was recovered, that was 47 grams of crack cocaine, granted that is gross. On top of that the Court would only have to find credible one witness, Andrew Morris, who testified that on at least five occasions he received 26 grams of crack cocaine from either Boris Ayala or Johnny Rosario. That is outlined in Paragraph 12.
>     Those two facts alone, the testimony of Andrew Morris and the amount of crack cocaine recovered from Gary Dupuis's house, is sufficient alone to find quantity Level 34. That is without any weight attributed by the CI, who attributes 26 kilograms of cocaine, and without any weight by Scott Dretchen, who testified that at least on half the -- the 10 occasions that he dealt with this defendant or his lieutenants he received crack cocaine, and doesn't attribute any weight whatsoever based upon the testimony of Gary Dupuis, who the defendant in his prosecution version admitted was part of this conspiracy.
>     So -- but the standard of reasonable estimate of drug quantity based upon the evidence, the Government believes it's overwhelming, Your Honor, that the preponderance of the evidence shows that this offense level -- the drug quantity is Offense Level 34.

(Sentencing Tr. at 17-18.)

The Court concluded: "With regard to the weights, the Court's satisfied by a preponderance that the weights of the illegal drugs are set forth properly in the presentence investigation report. I find those weights to be substantially correct." (Id. at 25.)

The following is the First Circuit's discussion on Ayala's direct appeal as it relates to this ground:

> Here, the district court's findings as to drug amounts were amply supported by the evidence detailed in the PSR. Rather than exaggerate the amounts, the PSR's estimates were expressly "conservative" in several respects. Moreover, any minor error in computing the drug amounts was harmless, since the same base offense level would have applied even if the total amount was much less than the 8,810 kilograms estimated by the PSR. See U.S.S.G. § 2D1.1(c)(3) (providing that level 34 applies to the equivalent of any amount between 3,000 and 10,000 kilograms of marijuana).

Ayala, 2008 WL 3965505 at 2.[7]

With respect to the First Circuit's observation that sentencing counsel's challenge to the PSR was conclusory (a remark supporting the Panel's rejection of the undeveloped due process argument), I do not view this observation as supporting per se a conclusion that sentencing counsel somehow fell short of the Strickland performance prong. As summarized in the discussion of these first four grounds, defense counsel made a significant effort from the PSR stage through to the end of the sentencing hearing to persuade the court as to what he thought

---

[7] Ayala does not seem to be revisiting the question of whether or not the Court should have used a higher standard than preponderance of the evidence. It is not inconsequential to this Court's review of sentencing counsel's overall trial strategy that he did take steps to preserve a claim that the Court should not be able to find facts at a preponderance of the evidence standard when, in the context of a guilty plea, there has been no admission of those facts. This challenge was premised on Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296, 303 (2004), United States v. Booker, 543 U.S. 220 (2005), and Cunningham v. California, 549 U.S.270 (2007) to judge-made drug quantity determinations. The Court concluded that it had not violated the principles set forth in United States v. Booker, 543 U.S. 220 (2005) and the First Circuit agreed. Ayala, 2008 WL 3965505 at 2.

Based on this analysis it is clear that Ayala cannot make a Strickland prejudice showing for sentencing counsel's inability to persuade the court to entertain his Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296, 303 (2004), United States v. Booker, 543 U.S. 220 (2005), and Cunningham v. California, 549 U.S.270 (2007) premised challenge to judge-made drug quantity determinations.

15

were tenable grounds to achieve a sentence around the 188-month range. While Ayala's January 13, 2010, Affidavit makes reference to what he told his attorney about the Texas charges it makes no such representation that he gave his attorney a reason to believe before sentencing that there were grounds to challenge drug quantities on the basis he now identifies. (Ayala Aff. ¶ d.) The record does not give me any indication that the Court was troubled by the drug quantity issue or that counsel could have made any headway by challenging the 'conflicts' in the evidence. See McGill, 11 F.3d at 225-26. What is more, the First Circuit has made an independent determination that there was ample evidence to support the Court's drug quantity conclusion and that it was not a close call.

### D.     Appellate Counsel and Variance Request[8]

With regards to appellate counsel, Ayala's first discontent is that he did not appeal the court's denial of sentencing counsel's request to consolidate his five prior convictions because he was sentenced on these crimes on a single day. (Sec. 2255 Mem. at 48-54.) In subsection C.2, I have discussed sentencing counsel's performance regarding this claim and cited the First Circuit's determination that this Court's sentencing decision passed the abuse of discretion standard. See Ayala, 2008 WL 3965505 at *3.

The United States concedes that appellate counsel could have brought attention during the pendency of the appeal to the United States Guideline Amendment 709 which altered the means of counting prior sentences so that sentences that were imposed on the same day are generally to be treated as a single sentence. However, to make a big issue out of this amendment

---

[8] Ayala initially identified two distinct grounds against appellate counsel but in his memorandum in response to the United States' opposition he discusses this as one claim. He also changes the focus of his claim and the United States has not had an opportunity to address the 'Texas conduct' aspect of appellate counsel's presentation to the First Circuit.

in Alaya's case would have been frivolous. United States Sentencing Guideline § 4A1.2(a)(2) now reads:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. <u>Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)</u>. If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence. See also § 4A1.1(f).

U.S.S.G. § 4A1.2(a)(2) (emphasis added). Perhaps because he has realized the amended guideline would not be grounds for relief even if applied to his criminal history, Ayala does not revisit this aspect of the claim in his responsive memorandum.

In this responsive memorandum, Ayala also does not repeat his claim that appellate counsel should have argued that the Court incorrectly required the defense to meet an "extraordinary circumstance" standard when it directed sentencing counsel to specifically point out the issues that warranted a variance. (Sec. 2255 Mem. at 41-42, Doc. No. 115 at 54-55.) Ayala seems to be referring to the following section of the sentencing transcript.

> THE COURT: Tell me which ones specifically support the variant sentence.
> [DEFENSE COUNSEL]: Specifically, I think that the Court should look at the confluence of the drug weight, the penal aspect of crack and potential for unclarity between whether or not some of these amounts were base or were powder, combined with the background of the defendant of in fact being a drug addict and not having a history of large-scale criminal activities. So while I'm essentially rearguing from a different perspective criminal history, I'm doing it under a variant combination. And because what I do is under this guideline finding of the Court, which I believe now is a 34 history VI, based on your rulings, we're looking at a guideline sentencing range of 262 to 327 months, which is an exceedingly high sentence for an individual who has never been involved in any violent conduct, who while admittedly has been involved in the use of drugs and the sale of drugs for a -- the bulk of his adult life, has never done that in the kinds of -- of violent and destructive ways that we have seen in other cases.

> Now, drugs in and of themselves are destructive, and he accepts that he is facing a very significant sentence here. But when we look at the factors in 3553(a), particularly need for rehabilitation, in this case the Court can balance the punitive and deterrent aspects of a lengthy sentence with the fact that a sentence in excess of 20 years is excessive and that the defendant will in fact be deported.
>
> In clarifying the fact that he previously was deported, I believe it was pointed out in the earlier objection to the presentence report, but what happened was he went back and his -- his mother died. And when he returned to the United States for her funeral shortly thereafter his brother died. And so he – he came back because of these deaths within the family, and he reverted to drug use based on the depression that set in following that. Probably doesn't sound all that empathetic, but his mother and his brother are now dead. So those same issues do not rearise, reattract him here in the future, and he understands, particularly under the enhancement, new illegal reentry laws, that once he is deported he is deported forever and that he will never come back.
>
> And so looking at this -- this case from the big picture, I would ask the Court to vary somewhat from that advisory range. And the Court would also take into account the fact that, while there is not a cooperation departure, he did provide a certain amount of information and did meet with the Government on several occasions and provide some degree of assistance. Thank you.

(Sentencing Tr. at 27-29.) The prosecutor argued against the variance and suggested "that a sentence of 262 months or the higher range is appropriate." (Id. at 30.) The Court made no reference during sentencing to an "extraordinary circumstances" requirement and any claim that the Court should not have asked counsel for an articulation of his variance argument is flatly meritless.

In his opposition memorandum Ayala again complains of appellate counsel's failure to properly appeal the denial of a sentencing variance, this time highlighting the Court's treatment of the Texas conduct. (Ayala Opp'n at 24-26.) As noted in subsection C.2, the First Circuit addressed the defense concern about the use of the Texas conduct as part of its review of the variance request in arriving at the conclusion that this Court's determination on this score was "procedurally and substantively sufficient." Ayala, 2008 WL 3965505 at *3. Thus, this aspect of the variance claim was brought before the First Circuit and there is no Strickland shortfall.

18

**Conclusion**

For the reasons stated above, I recommend that the Court deny Ayala 28 U.S.C. § 2255 relief. I further recommend that a certificate of appealability should not issue in the event Ayala files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 3, 2010.